UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AZRIEL and DANIELLA MORAG,<br>   Plaintiffs, | :<br>:<br>: |
| v. | :  Case No. 3:07-cv-1062 (PCD) |
| QUARK EXPEDITIONS, INC.,<br>   Defendant. | :<br>:<br>: |

**RULING ON QUARK'S MOTION TO DISMISS**

Defendant Quark Expeditions, Inc. ("Quark") has moved to dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*. For the reasons stated below, Defendant's Motion to Dismiss [Doc. No. 11] is **granted.**

**I. BACKGROUND**

The allegations in this case read like a fact pattern from a civil procedure exam.[1] This action arises out of personal injuries suffered by the Plaintiff Azriel Morag, who is a citizen and resident of Israel, when he and his wife Daniella, also a citizen and resident of Israel, were passengers aboard a cruise ship traveling from Antarctica to Argentina run by Supernova Expeditions Ltd ("Supernova"), a company organized and incorporated under the laws of Anguilla, British West Indies. Plaintiffs had booked their trip through a travel agent in Israel, who in turn booked the trip with Quark, a Delaware corporation with a principal place of business in Connecticut, who markets and sells Supernova's cruise trips to travel agents and other organizations. (See Def.'s Aff. ¶¶ 7-9.) During the ship's two-day crossing of the Drake

---

[1] A court considering a motion to dismiss under Rule 12(b)(6) must accept the facts alleged in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

Passage, Mr. Morag fell and suffered extensive spinal and other injuries which have rendered him quadriplegic.  Mr. Morag received emergency medical treatment aboard the ship, was then airlifted to Buenos Aires, Argentina, for further treatment, and then transferred to Miami, Florida for surgery and treatment.  (See Am. Compl. ¶ 27; Pl.'s Mem. at 3, Ex. C, Ex. I ¶ 10.)  Mr. Morag now seeks damages for personal injuries, pain and suffering, loss of enjoyment of life, medical expenses, and other economic loss, all of which he alleges were caused by the negligence and/or recklessness of Quark's failure to warn and failure to take necessary safety precautions.  (Am. Compl. ¶¶ 27-33.)  Plaintiff Daniella Morag seeks damages for loss of consortium arising out of the injuries of her husband.  (Id. at ¶¶ 50-52.)[2]

Quark and Supernova are parties to a General Sales Agreement (the "Agreement"), pursuant to which Quark is the exclusive general sales agent for worldwide sales for Supernova, the principal.  Pursuant to the Agreement, Quark is to use its best efforts to "create, market and sell Supernova's cruise products to airlines, tourist boards, travel agents and the general public as well as institutional and non-profit organizations," and, in exchange, Supernova is to pay Quark a commission.  (See Def.'s Aff. ¶¶ 1, 7.)  The Agreement provides that all disputes arising out of the Agreement shall be referred to arbitration, such arbitration is to take place in London, England, and the Agreement is to be governed by and in accordance with English law.  (Id. ¶ 12.)

In or around July 2006, Mr. Morag was provided with his cruise ticket for him and his wife, which he signed on July 15, 2006.  (See Def.'s Ex. C.)  The ticket is a two-page document

---

[2]  Plaintiffs also named Supernova and Lyubov Orlova Shipping ("Orlova"), a corporation organized under the laws of Switzerland and/or Malta and/or Russia and/or some other country (id. at ¶ 5), as defendants to this action, but the claims against them have been voluntarily dismissed.  (See Doc. Nos. 23, 24.)

with printing on the front and back pages. On the top of the back of the first page of the ticket is the following language:

> **CRUISE CONTRACT TERMS AND CONDITIONS – IMPORTANT NOTICE TO PASSENGERS:**
>
> **CAREFULLY READ THESE CRUISE CONTRACT TERMS AND CONDITIONS, ESPECIALLY SECTIONS 10 TO 16 WHICH LIMIT YOUR RIGHT AND TIME TO SUE AND THE AMOUNT OF THE CARRIER'S LIABILITY. BOTH THE PASSENGER AND THE CARRIER ARE LEGALLY BOUND BY THIS CONTRACT.**

(Def.'s Ex. C.) On the back of the second page of the ticket are the following paragraphs relevant to the pending motion:

> **16. PLACE OF SUIT**
> All disputes, claims and suits and matters whatsoever arising under, in connection with or incident to this Ticket or Contract shall be brought and litigated, if at all, in and before a court of proper venue located in London, England, to the exclusion of the courts of any other city, state or country. ...
>
> **20. THIS IS A CONTRACT.**
> THE PROVISIONS OF THE TICKET AND CONTRACT REPRESENT THE ENTIRE AGREEMENT AND IS A BINDING CONTRACT BETWEEN THE PASSENGER AND THE CARRIER. THE PASSENGER SIGNING THIS CONTRACT OR ACCEPTING THE TICKET CONSTITUTES THE PASSENGER'S CONSENT TO THE CONTRACT TERMS AND CONDITIONS WHICH SUPERSEDE ALL ORAL OR WRITTEN REPRESENTATIONS. ANY CHANGE IN THIS CONTRACT MUST BE IN WRITING AND SIGNED BY A CORPORATE OFFICER OF THE CARRIER AND MAY REQUIRE A COMMENSURATE INCREASE IN FARE.
>
> I hereby acknowledge that I have received, read and agree to all the terms and conditions of the Ticket and Contract.

(Id.)

Plaintiffs assert that this Court has subject matter jurisdiction over this action because ti is a suit within the admiralty and maritime jurisdiction of the court and, therefore, involves federal question jurisdiction pursuant to 28 U.S.C. § 1331(1) and Rule 9(a) of the Federal Rules of Civil

Procedure. (Am. Compl. ¶ 6.) Plaintiffs also assert jurisdiction based on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332. (Id. at ¶ 7.) Plaintiffs allege that venue is "appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to plaintiffs' claims occurred within this judicial district, including the issuance of a brochure and tickets while the remainder occurred on the high seas." (Id. at ¶ 11.)

Defendant Quark now moves to dismiss Plaintiffs' Amended Complaint on three grounds: (1) the plaintiffs brought suit in violation of the forum selection clause in the ticket agreement; (2) improper venue; and (3) the doctrine of *forum non conveniens.*

## II. STANDARD OF REVIEW

When ruling on a Rule 12(b)(3) motion to dismiss for improper venue, "[t]he court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged a court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (internal marks and citations omitted); see also 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, Civil 2d § 1352 (1990 & Supp. 1999). The plaintiff bears the burden of showing that venue in the forum is proper. Reyad, 167 F. Supp. 2d at 237. When deciding a motion to dismiss for improper venue, courts may consider materials outside the pleadings. Roncaioli v. Investec Ernst & Co., No. 3:02-CV-2113 (SRU), 2003 WL 22244936, at *1 (D. Conn. Sept. 26, 2003) (citations omitted); see also New Moon Shipping Co., Ltd. v. Man B&W Diesel AG, 121 F.3d 24, 26 (2d Cir. 1997)). If the court determines that venue is improper, it may dismiss or transfer the case to any district in which the case could have

been brought. Abramski v. Potter, No. 3:05-CV-22 (SRU), 2005 WL 3021926, at *2 (D. Conn. Oct. 31, 2005) (citing Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)). The district court has discretion under 28 U.S.C. § 1406(a) to determine whether to dismiss or transfer the action. Id.

The function of a motion to dismiss pursuant to Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted). Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true, draw inferences therefrom in the light most favorable to the plaintiff, and construe the complaint liberally. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Id. at 1964-65; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (declining to read Twombly's "flexible plausibility standard" as relating only to antitrust cases).

## III. DISCUSSION

Quark first moves to dismiss on the ground that the mandatory forum selection clause in the Morags' passenger ticket precludes their bringing a lawsuit in this court. Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the

resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty and international transactions). A forum selection clause can bind the parties even where the agreement in question is a form consumer contract and not subject to negotiation. Carnival Cruise Lines v. Shute, 499 U.S. 585, 590-94, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). Courts engage in a four-part analysis to determine whether a dismiss a claim based on a forum selection clause. Phillips v. Audio Active, Ltd., 494 F.3d 378, 383 (2d Cir. 2007). The Court is to consider: first, whether the clause was "reasonably communicated to the party resisting enforcement"; second, whether the clause is mandatory or permissive, "i.e. ... whether the parties are required to bring any dispute to the designated forum or simply permitted to do so"; and third, whether the claims and parties involved in the suit are subject to the forum selection clause. Id. (citations omitted). If the forum clause was communicated to the resisting party, has mandatory force, and covers the claims and parties involved, it is presumptively enforceable. Id. The fourth and final step for the Court is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. at 384 (quoting M/S Bremen, 407 U.S. at 15, 92 S. Ct. 1907); see also Roby v. Corporation of Lloyds, 996 F.2d 1353, 1363 (2d Cir.), cert. denied, 510 U.S. 945, 114 S. Ct. 385, 126 L. Ed. 2d 333 (1993).

The Second Circuit has construed Bremen's "unreasonable" exception narrowly and has not hesitated to enforce forum selection clauses, "even in contracts of adhesion and even when doing so would result in inconvenience for the nonmoving party." Vertucci v. Orvis, No. 3:05-

cv-1307 (PCD), 2006 WL 1688078, at *7 (D. Conn. May 30, 2006); Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995); New Moon Shipping, 121 F.3d at 32 ("The party claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape the contractual clause, he must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'") (quoting Bremen, 407 U.S. at 18, 92 S. Ct. 1907); Reyad, 167 F. Supp. 2d at 244 ("To invalidate a forum selection clause, the resisting party must overcome a substantial presumption in favor of enforcement.") (internal quotation marks and citation omitted).

The forum selection clause in the Morags' passenger ticket is presumptively enforceable. Plaintiffs argue that the limitations and venue clauses are unenforceable as they are "unreasonably small and unreadable." (Am. Compl. ¶ 22.) However, the ticket-contract presented in this case is typical of a cruise ship ticket, announcing a warning in bolded, capitalized, medium-sized lettering and expressly referring the passengers to the sections of the ticket-contract that may serve to limit their rights. Section 16 of the ticket-contract states in clear and unambiguous language that all suits arising under the contract "shall be brought and litigated, if at all, in and before a court of proper venue located in London, England, to the exclusion of the courts of any other city, state or country." (Defs.' Ex. C.) The Second Circuit has upheld provisions in ticket-contracts that were communicated to passengers in a manner similar to the forum selection clause in this case, that is, by means of fine print in a form contract, provided that the language is clear that all suits must be brought within the forum set forth therein. See Effron, 67 F.3d at 9-10 (requiring Florida state resident to sue in Athens, Greece); see also Salza v. Norwegian Cruise Line, Ltd., 3:07-cv-142 (PCD), 2007 U.S. Dist. LEXIS 28570, at *1

(D. Conn. April 16, 2007). Although the fine print in this ticket-contract is rather small—the warning headline (i.e., "IMPORTANT NOTICE") appears in 1/8" type and the additional warning and text of the contract itself is 1/16" type (see Def.'s Ex. C)—courts have specifically upheld ticket-contracts with such fine print. See Marek v. Marpan Two, Inc., 817 F.2d 242, 246-47 (3d Cir.), cert. denied, 484 U.S. 852, 108 S. Ct. 155 (1987) (which concluded, when reviewing 1/8" and 1/6" warnings, that "[a]lthough the print is small, we have no trouble reading it, and the paragraph is certainly not so muddled or illegible as to be unenforceable.").

Plaintiffs have failed to meet their burden of making a strong showing that enforcement of the ticket-contract's forum selection clause would be unfair and unreasonable. The Supreme Court held in Shute that there is nothing fundamentally unfair about a form ticket-contract between a passenger and a cruise ship simply because it was not the subject of bargaining. Shute, 499 U.S. at 593, 111 S.Ct. 1522. Plaintiffs are correct that the proposed London, England forum seems remote and inconvenient to all parties, none of which is incorporated, maintains its principal place of business, or is a citizen or resident of England. The only apparent links to London in this case are the forum selection clause in the passage contract and the choice of law clause in Quark and Supernova's Agreement and the fact that more than twenty of the other passengers on board the Lyubov Orlova were from the United Kingdom. (See Def.'s Ex. E.) None of these facts suggests that London would be a convenient forum for two Israeli citizens to sue a Connecticut-based corporation for injuries arising out of a trip aboard foreign cruise liner sailing the Drake Passage. However, unfortunately for the Morags, as the Second Circuit has written in a similar case, "we are concerned here with a forum of contract, not of convenience." Effron, 67 F.3d at 11. Plaintiffs have shown nothing fundamentally unfair, despite its

8

inconvenience, about the mandatory forum selection clause, and the Court is convinced that the forum selection clause was reasonably communicated so as to permit the Morags to be meaningfully informed of the contractual terms at stake. See Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352, 359-60 (S.D.N.Y. 2004).

Plaintiffs contend that Quark, which is not a carrier or a direct signatory to the passage contract at issue here, has no standing to enforce the mandatory forum selection clause. However, federal courts, including those in the Second Circuit, have enforced forum selection clauses even when all parties to the litigation were not named in the contract. See Novak v. Tucows, Inc., No. 06-cv-1909, 2007 WL 922306, at *13 (E.D.N.Y. March 26, 2007) (rejecting claim that defendant, a non-party to a contract, could not invoke a forum selection clause); Direct Mail Production Servs. Ltd. v. MBNA Corp., No. 99-cv-10550, 2000 WL 1277597, at *5 (S.D.N.Y. Sept. 7, 2000) (principles of mutuality and fairness require that non-party defendant be entitled to assert forum selection clause in defending against claim of party plaintiff). A non-party to a contract may invoke a contractual forum selection clause if the non-party is "closely related" to one of the signatories to the contract such that "the non-party's enforcement of the ... clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." Cfirstclass Corp. v. Silverjet PLC, __ F. Supp. 2d __, No. 07-cv-6371 (SHS), 2008 WL 2389811, at *3 (S.D.N.Y. June 11, 2008) (quoting Direct Mail, 2000 WL 1277597, at *3) (internal quotation marks omitted); see also Holland America Line Inc. v. Wärtsilä North America, Inc., 485 F.3d 450, 456 (9th Cir. 2007) (a forum selection clause applied to all defendants, even when only one had signed the contract, because "where the alleged conduct of the nonparties is closely related to the contractual relationship, 'a range of

transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" (citing Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n. 5 (9th Cir. 1988)); Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993). "A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." Cuno, Inc. v. Hayward Indus. Prods., Inc., No. 03-cv-3076 (MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (quoting Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)).

There is no question that Quark is closely related to the dispute and that its relation to the ticket-contract was foreseeable. Quark's relation to the Morags, and to any injuries they suffered while on their Antarctic cruise, is memorialized and binding only insofar as Quark is a related party to the ticket-contract between the Morags and the carrier. Furthermore, it was foreseeable both that Quark would be subject to the terms of the ticket-contract and that it might choose to invoke them on its own behalf. Paragraph 3 of the ticket-contract's term and conditions states:

> **3. GENERAL PROVISIONS**
> . . .
> **(c) Third Party Responsibility.** This Ticket and Contract is only with the Carrier named on the Ticket. No other person or company shall be responsible in any way to the Passenger.
>
> **(d) Limitations Apply if Third Party is Held Responsible.** However, if any other person or company is held responsible or liable to the Passenger, all benefits, limitations, exonerations and exemptions from liability, defenses and immunities referred to in this Contract or under law or treaty or from any other source, aply to such person or company and their vessels, agents, servants, employees, masters, crew, physicians and stevedores.

(Def.'s Ex. C.) This language clearly contemplates, and puts the passengers on notice, that the terms and limitations of the ticket-contract, including the forum selection clause, apply to third

parties such as Quark and other booking agents.  Similarly, the language of the forum selection clause itself is broad enough to apply to parties other than the carrier: it states that "*all disputes, claims and suits and matters whatsoever* arising under, in connection with or incident to this Ticket or Contract" shall be brought in London, not just any claims against the "carrier."  (See id. (emphasis added).)

For these reasons, Quark has standing to invoke the forum selection clause in the Morags' ticket-contract with Supernova, and this mandatory forum selection clause dictates that the Morags bring their claims in London, England.  The Court therefore has no choice but to dismiss this case in violation of the forum selection clause of the ticket-contract.  Accordingly, it need not address Defendant's motion to dismiss for improper venue and pursuant to the doctrine of *forum non conveniens.*

## IV. CONCLUSION

Defendant Quark's Motion to Dismiss [Doc. No. 11] is hereby **granted.**  Plaintiffs' claims against Quark are hereby dismissed.  The Clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, this   1st   day of August, 2008.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court

11